```
IN THE UNITED STATES DISTRICT COURT
 FOR THE WESTERN DISTRICT OF NORTH CAROLINA
              STATESVILLE DIVISION
                 5:06CV65-MU-02
```

| | | |
|---|---|---|
| CHAD TYRONE KINCAID, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | ORDER |
| | ) | |
| UNITED STATES MARSHAL; | ) | |
| DR. ABERNATHY, Physician | ) | |
|   at Caldwell County Jail) | | |
| GARY CLARK, Sheriff of | ) | |
|   Caldwell County Jail; | ) | |
| and | ) | |
| JOHN DOES, Unidentified | ) | |
|   Sergeants at the Cald- | ) | |
|   well County Jail, | ) | |
|     Defendants. | ) | |
| _____) | | |

**THIS MATTER** comes before the Court on review of the plaintiff's civil rights Complaint under 42 U.S.C. §1983, filed May 24, 2006. After careful consideration, for the reasons stated herein, the plaintiff's Complaint will be <u>dismissed</u>, ultimately, for his failure to state a constitutional claim for relief.

According to the Complaint, at all times relevant to this action, the plaintiff was a federal pre-trial detainee. The plaintiff alleges that on September 1, 2005, he was arrested for alleged violations of federal law. Following the plaintiff's arrest, he was arraigned and then detained at the Caldwell County Jail.

While in the custody of the Caldwell County Jail, the plaintiff alleges that on unspecified dates in 2005 through January 2006, he complained of persistent chest pains. However, it was not until January 15, 2006, when the plaintiff actually "filled out a 'sick call' request, for the purpose of being seen by medical personnel at the Jail. Thus, on January 16, 2006, the plaintiff was seen by a Jail nurse, who examined him and directed that he be given "Prilosec." Consequently, the plaintiff reports that three days after that examination, he began taking "Prilosec" for "indigestion or acid reflux."

The plaintiff further reports that he did not get any relief from that medication, and so he continued to complain of chest pain. Based upon those continued complaints, on February 5, 2005, an unidentified officer began monitoring the plaintiff's vital signs, including his blood pressure levels, which presumably did not show any abnormality. Nevertheless, the plaintiff continued to complain of pain, and so he then underwent a "three minute" appointment with defendant Dr. Abernathy. After the plaintiff's "interview" with this defendant, his medication was changed from "Prilosec" to "Nexium," and Jail personnel continued to monitor the plaintiff's vital signs.

Thereafter, on February 15, 2005, the plaintiff allegedly asked an unidentified Sergeant at the Jail to contact the U.S. Marshal for the Western District of North Carolina in order to

report his complaints to the Marshal. Three days later, however, the plaintiff reportedly was advised, in the Sergeant's opinion, that the Marshal would deny his request "for treatment, evaluation or diagnosis" of his chest pain. The Sergeant then gave the plaintiff some "Tums" tablets for his discomfort.

The plaintiff alleges that upon his urging, on February 20, 2006, his father contacted Jail authorities and requested that the plaintiff immediately be seen by a physician. In response to that contact, on February 21, 2006, the plaintiff was taken to a local hospital, where he underwent numerous tests, including an EKG test. Although the plaintiff asserts that he was returned to Jail before the results from all of those tests were obtained, he concedes that later that same day he was told by an unidentified Jail employee that his EKG "was good."

Nevertheless, the plaintiff reports that approximately one to two hours after returning to the Jail, he told an officer that he was having "crushing chest pains and pain in [his] arm." In response to that complaint, the plaintiff was taken by ambulance back to the hospital's Emergency Room. Once in the Emergency Room, the plaintiff reportedly was told that he was "'in the midst of a . . . heart attack.'" An Angiogram evaluation reportedly revealed that the plaintiff's heart attack was caused by a clogged artery. Consequently, the plaintiff was treated with an Angioplasty procedure and "cardiac drugs." After being released

3

from the hospital, the plaintiff was transferred to the Columbia Care Center in Columbia, South Carolina, where he is awaiting sentencing in his federal criminal case.

Based upon the foregoing, therefore, the plaintiff now is seeking $5,000,000.00 in compensatory and punitive damages because he believes that the defendants' conduct violated his constitutional rights. However, while it certainly is unfortunate that the plaintiff suffered a heart attack, the facts of this case simply do not rise to the level of stating a claim for relief under the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979)(noting that claims challenging conditions of confinement for pre-trial detainees are to be analyzed under Fourteenth Amendment).

To be sure, at the outset, the Court notes that the plaintiff has named the United States Marshal as a defendant in this action. However, notwithstanding the fact that the plaintiff does not even allege any facts which could give rise to liability on the Marshal's part, this action cannot be maintained against the Marshal for another significant reason. Rather, as was noted in District of Columbia v. Carter, 409 U.S. 418, 424-25 (1973), allegations concerning Fourteenth Amendment violations may not be brought against federal officials under §1983. Therefore, the plaintiff cannot prevail in this action against the U.S. Marshal.

Next, the Court also has determined that the plaintiff's

4

allegations against the remaining defendants cannot be maintained. That is, based upon the allegations set forth in the instant Complaint, this Court cannot conclude that the defendants were deliberately indifferent to the plaintiff's serious medical needs.

Assuming the existence of a serious medical condition, as can be done here, to establish a claim for deliberate indifference, a plaintiff must allege facts which tend to establish that the defendants knew of and disregarded that condition. Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). Deliberate indifference can be demonstrated either by actual intent or reckless disregard. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). As to a health care provider, to establish deliberate indifference, the plaintiff must be able to demonstrate that the care which he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. at 851-52. Ultimately, therefore, "[d]eliberate indifference is a very high standard--a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). To put it another way, only that conduct that "shocks the conscience" is actionable under the Fourteenth Amendment. County of Sacrament v. Lewis, 523 U.S. 833, 846 (1998).

In the instant case, although the plaintiff asserts that

following his arrest in September 2005, he complained of chest pain "on a daily basis," he does not identify the parties to whom he allegedly made such complaints. More critically, by his own admission, it was not until January 15, 2006, that the plaintiff actually complied with Jail protocol and "filled out a 'sick call' request." Thus, that date must be the Court's starting point for analyzing the defendants' conduct in this case.

Moreover, although the plaintiff takes issue with the fact that he did not receive a response to his request until the following day when he was examined by an unidentified nurse at the Jail, such delay clearly does not constitute indifference. Nor does the three day delay between that examination and the diagnosis--albeit erroneous--of "indigestion or acid reflux," and the administration of medication reflect any indifference.

As has been noted, the plaintiff's continued complaints of "episodes" of chest pain were addressed by his visit with the Jail's doctor, a modification of his medication regimen and the monitoring of his vital signs by non-medical personnel. Thereafter, the defendants responded to the plaintiff and his father's reports of continued pain by transporting him to a local hospital for testing and treatment as indicated. Once again, however, by the plaintiff's own admission, the results from the hospital's tests were "good."

Furthermore, notwithstanding those results, when the

plaintiff returned to Jail personnel with his first reported complaints of "crushing chest pains and pain in [his] arm," he immediately was returned to the hospital's Emergency Room for treatment of those complaints. Consequently, the plaintiff simply cannot establish any indifference on these allegations. Indeed, nowhere in the plaintiff's Complaint does he allege that any of the tests, procedures or interaction with Jail personnel revealed the existence of a serious condition prior to the time that he experienced his heart attack.

Thus, while such allegations ultimately may provide a basis to support a conclusion that the defendants' conduct was negligent, it is well settled that mere negligence does not rise to a constitutional violation. See Estelle v. Gamble, 429 U.S. 97, 1005-06 (1976). Indeed, in Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986), the Fourth Circuit Court of Appeals stated that when an inmate does, in fact, receive substantial medical attention or treatment--as is here reflected by the Complaint-- the basis of any claim which can be alleged sounds in tort law principles, not constitutional ones. See also Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975) (noting that mere disagreement between inmate and physician about course of treatment does not state a claim for deliberate indifference to serious medical needs under constitutional law). Thus, inasmuch as such claims are not cognizable in federal court under circumstances

such as these, this Complaint must be <u>dismissed</u> in its entirety.

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's Complaint is **DISMISSED** for its failure to state a constitutional claim for relief. <u>See</u> 28 U.S.C. 1915(A)(b)(1).

**SO ORDERED.**

Signed: June 14, 2006

Graham C. Mullen
United States District Judge